O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DERICA L. STOECKER, | Case No. CV 13-8892-KK |
| Plaintiff, | |
| | MEMORANDUM AND ORDER |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Derica L. Stoecker seeks review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Agency") finding that Plaintiff was no longer disabled as of October 1, 2010, and is therefore no longer eligible to receive Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c). For the reasons stated below, the Commissioner's decision is REVERSED and this action is REMANDED for further proceedings consistent with this Order.

# I.

## **PROCEDURAL HISTORY**

On April 29, 2003, Plaintiff filed an application for SSI. Administrative Record ("AR") at 115. On September 19, 2005, an ALJ approved the application, finding Plaintiff had a seizure disorder that met the criteria of Social Security Listing 11.03. Id. at 117.

On October 14, 2010, the Agency issued a Notice of Disability Cessation, stating the Agency had reviewed Plaintiff's case and determined that, as of October 1, 2010, she was "no longer disabled" and therefore no longer eligible for SSI. Id. at 118-19. On April 8, 2011, after a disability hearing, the Agency upheld its non-disability determination. Id. at 140. On April 13, 2011, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Id. at 143.

Three hearings were held before ALJ Michael J. Kopicki on October 17, 2011, March 23, 2012, and June 15, 2012. See id. at 42-104. Plaintiff appeared without counsel at all three hearings. Id. at 44, 77, 101. On September 24, 2012, the ALJ issued a decision finding that Plaintiff's disability ended on October 1, 2010, and that she had not become disabled again since that date. Id. at 22.

On November 2, 2012, Plaintiff asked the Agency's Appeals Council to review the ALJ's decision. Id. at 16. On November 1, 2013, the Appeals Council denied Plaintiff's request for review. Id. at 1.

On December 11, 2013, Plaintiff filed the instant action. This matter is before the Court on the parties' Joint Stipulation ("JS"), filed August 29, 2014, which the Court has taken under submission without oral argument.

# II.

## **STANDARD FOR EVALUATING CONTINUING DISABILITY**

In assessing whether a claimant continues to be disabled for purposes of SSI, an ALJ must follow a seven-step sequential evaluation process. The steps are:

(1) Does the claimant have an impairment, or combination of impairments, which meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant's disability continues. If not, proceed to step two.

(2) Has there been medical improvement, as shown by a decrease in the medical severity of the impairment(s) at the time of the most recent favorable medical decision finding Plaintiff to be disabled? If so, proceed to step three. If not, proceed to step four.

(3) Was any medical improvement related to the ability to work (*i.e.*, has there been an increase in the claimant's residual functional capacity)? If so, proceed to step five. If not, proceed to step four.

(4) Do any of the exceptions in 20 C.F.R. § 416.994(b)(3) or (b)(4) apply? If one of the exceptions in subsection (b)(3) applies, proceed to step five. If one of the exceptions in subsection (b)(4) applies, the claimant's disability ends. If no exception applies, the claimant's disability continues.

(5) Is the claimant's current combination of impairments severe? If so, proceed to step six. If not, the claimant's disability ends.

(6) Does the claimant possess the residual functional capacity to perform past relevant work? If so, the claimant's disability ends. If not, proceed to step seven.

(7) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to do other work? If so, the claimant's disability ends. If not, the claimant's disability continues.

See 20 U.S.C. § 416.994(b).

## III.

## THE ALJ'S DECISION

At step one, the ALJ found that, since October 1, 2010, Plaintiff has not had an impairment or combination of impairments which meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR at 26. At step two, the ALJ found medical improvement occurred as of October 1, 2010. Id. at 28. At step three, the ALJ found the medical improvement was related to Plaintiff's ability to work. Id. The ALJ did not analyze step four. At step five, the ALJ found Plaintiff has a severe impairment or combination of impairments, including, *inter alia*, a seizure disorder and mood disorder. Id. at 29. The ALJ did not analyze step six because he found Plaintiff has no past relevant work. Id. at 34. At step seven, the ALJ found Plaintiff has the residual functional capacity to perform light work with various exceptions, and that, beginning on October 1, 2010, Plaintiff was able to perform a significant number of jobs in the national economy. Id. at 29, 34.

## IV.

## DISCUSSION

Plaintiff's sole contention is the ALJ failed to properly develop the record. JS at 3.

### A. Legal Standard

"The ALJ always has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003) (citation and internal quotation marks omitted). "[I]t is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." Id. (citation and internal quotation marks omitted). When the claimant is unrepresented, represented by a lay person, or possibly mentally ill, "the ALJ must be especially diligent in exploring for all the relevant facts." Tonapetyan v. Halter,

242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted). "The duty to provide an adequate record is of extraordinary importance when a person once found eligible for SSI benefits may be in danger of losing them because he is too ill to act in his own best interests." Higbee v. Sullivan, 975 F.2d 558, 562 (9th Cir. 1992) (citing, *inter alia*, Delorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991)).

"Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry." Tonapetyan, 242 F.3d at 1150 (citations and internal quotation marks omitted). "The ALJ may discharge this duty in several ways, including subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." Id. (citations omitted).

If the ALJ erred, the error may only be considered harmless if it is "clear from the record" that the error was "inconsequential to the ultimate nondisability determination." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (citation and internal quotation marks omitted).

**B.    Application**

Plaintiff was unrepresented at each of the three hearings before the ALJ. AR at 44, 77, 101. In addition, Plaintiff had possible mental illness; she asserted she was depressed, and the ALJ found she suffered from an unspecified mood disorder. See id. at 24, 57. Because Plaintiff was unrepresented, possibly mentally ill, and faced a loss of benefits, the ALJ was required to be "especially diligent in exploring for all the relevant facts." Tonapetyan, 242 F.3d at 1150.

The ALJ did not fulfill this duty. There is strong evidence that the record was inadequate to properly evaluate Plaintiff's claims, including the claim that she continued to suffer frequent seizures. For example, at the March 2012 hearing, after the ALJ asked a nonexamining medical expert, Dr. William Rack, for his opinion, Dr. Rack complained

that "[t]here are no recent records concerning [Plaintiff's] case," and that "[t]he record tends to be all prior to 2011."  AR at 80; see also id. at 79 (Dr. Rack noting there is "surprisingly little detail in the[] records" regarding Plaintiff's seizure disorder).  Dr. Rack also testified he was "not [at] all secure as to the frequency with which seizures are occurring," and that he was "even less secure" regarding whether Plaintiff was using "appropriate medicine."  Id. at 80.  Dr. Rack stated:  "[Plaintiff] is being seen at [Los Angeles County + USC Medical Center,] which is obviously a sophisticated facility, but the detail in the records is really very much lacking."  Id.

The ALJ clearly understood that Dr. Rack was seeking additional information.  Summarizing Dr. Rack's testimony, the ALJ stated:  "Basically Dr. Rack testified that Ms. Steocker had a seizure disorder . . . , but that there was very little in the record in terms of describing the seizure frequency, in terms of describing the actual seizure itself, and we had no blood test measuring . . . whether her seizure medication was at therapeutic levels."  Id. at 82.  However, there is no evidence the ALJ attempted to more fully develop the record regarding "seizure frequency" or any other issue; the ALJ did not order consultative testing, much less subpoena or submit questions to Plaintiff's treating physicians.  Rather, the ALJ instructed Plaintiff to more fully develop the record.  At the conclusion of the March 2012 hearing, the ALJ said:  "[Y]ou're going to have to make some attempts to update your records . . . from USC, okay?"  Id. at 97.

The inadequacy of the record continued to be a problem at the June 2012 hearing.  After Plaintiff claimed she had, within the past year, received treatment for seizures, depression, and incontinence, the ALJ stated:

> And I'm looking through your records and they're very sparse in terms of treatment for all of these conditions.  You know, we don't really know – you have seizures despite your medication, but we don't know if your medication is being absorbed at therapeutic levels. . . . Also, you know, these are evidence[]-based programs and I kind of need – I need evidence to help evaluate this.

AR at 57.

The ALJ appeared to dismiss the notion that he, rather than Plaintiff, was

ultimately responsible for fully developing the record. For example, at one point during the June 2012 hearing, Plaintiff's stepfather testified that, about one month earlier, he took Plaintiff to the emergency room at a hospital in El Monte, California, for a seizure. Id. at 65. When the ALJ appeared to question the veracity of this claim, the stepfather told the ALJ he could "go get [the records]." Id. The ALJ responded: "Well, I'm not going to go get them." Id.

Given the statements by the ALJ and Dr. Rack, and given the absence of evidence that the ALJ subpoenaed or submitted questions to Plaintiff's physicians, it is clear the ALJ was not sufficiently diligent in developing the record. This error was not harmless. Before Dr. Rack gave his expert opinion, he complained about the absence of "recent records"; the ALJ then relied on Dr. Rack's opinion in finding Plaintiff could perform light work with certain exceptions. Id. at 33, 80. Moreover, the ALJ found insufficient objective evidence to support Plaintiff's claims that she suffered from severe gallstones, bipolar disorder, and more than one seizure per week. Id. at 25-27. Had the ALJ properly developed the record, his findings on these issues, and possibly others, might have changed. Each step of the ALJ's analysis was potentially affected by the failure to properly develop the record. Because it is not "clear from the record" that this failure was "inconsequential to the ultimate nondisability determination," the ALJ's decision must be reversed and this action must be remanded for further proceedings. Robbins, 466 F.3d at 885.

## V.

## **CONCLUSION**

For the foregoing reasons, IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner and REMANDING this action for further proceedings consistent with this Order.  IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED:  October 2, 2014

HON. KENLY KIYA KATO
United States Magistrate Judge